IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Olusegun Falana | ) | CASE NO. 5:08CV720 |
| | ) | |
| Plaintiff, | ) | JUDGE DAVID D. DOWD, JR. |
| | ) | |
| v. | ) | |
| | ) | **PLAINTIFF'S BRIEF IN SUPPORT OF FINDING THIS TO BE AN EXCEPTIONAL CASE AND AWARDING ATTORNEY FEES** |
| Kent State University, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Pursuant to the Court's April 20, 2012 Order (DE 120), setting a briefing schedule on the issue of exceptionality, Plaintiff Olusegun Falana herein submits his brief in support.

## I. Introduction

### A. Case Status

This Court issued its Findings of Fact, Conclusions of Law and Order on December 15, 2010. [DE 92]. The Court concluded that Falana is a joint inventor of the '789 Patent. [Id., at 39-40]. The Court issued extensive findings of fact, which are incorporated herein by reference. [Id., at 3-26].

In addition to finding Falana a joint inventor, the Court concluded that this case is "exceptional" within the meaning of 35 U.S.C. § 285, and that attorney fees are justified and warranted. [Id., at 42]. However, the Court's Judgment Entry states only, "IT IS HEREBY ORDERED ADJUDGED AND DECREED that OLUSEGUN M. FALANA is a named inventor of United States Patent No. 6,830,789," and does not elaborate on the finding of exceptionality. [DE 93] (emphasis original).

Nevertheless, KSU and Seed appealed the Court's Judgment to the Federal Circuit on the issues of exceptionality and fees as well as the issue of inventorship. Subsequent to the filing of the



`

appeal by KSU and Seed, the Court issued an order stating, "the Court will defer ruling on plaintiff's application for attorney fees and costs until such time as the Federal Circuit renders its decision in the pending appeal." [DE 107, at 3]. The Court of Appeals has now affirmed the Judgment, and agreed with Falana that the finding of exceptionality was not a final appealable order. *Falana v. Kent State Univ*., 669 F.3d 1349, 1360 (Fed Cir. 2012) ("The district court's decision finding the case exceptional and awarding attorney fees that remain as of yet unquantified is not final and thus, not appealable.").

After referring the remaining attorney fees issue to mediation, which did not reach a resolution, this Court conducted a status conference and subsequently set a briefing schedule for the parties to brief the issue of exceptionality, and whether attorney fees are warranted. "The Court's findings and conclusions regarding the question of whether this case is exceptional and an attorney fee award is justified, as well as the Federal Circuit's comment, were both issued without the benefit of complete briefing by the parties on that subject." [April 20, 2012 Order; DE 120, at 2]. The Court's April 20 Order states that,

> . . . the Court has concluded that the parties should be permitted to fully brief this issue, and the Court is prepared to fully reconsider the portion of its Findings of Facts and Conclusions of Law with respect to its exceptional case and attorney fee determination.

[Id., at 2-3].

**B. Interlocutory Ruling on Exceptionality**

In its decision, the Court of Appeals stated, "this court affirms the district court's judgment as to inventorship and does not address the district court's exceptional case determination and attorney fees award, which are not properly before us." *Falana*, 669 F.3d at 1352. However, the Court of Appeals added the following statement:

> Because the district court's exceptional case finding and award of attorney fees are not yet final, they are not properly before us and will not be addressed, except to note

> for the benefit of the district court the persuasive arguments raised by the Defendants in this appeal.

*Id.*, at 1362.

Falana suggests that the Court of Appeals may simply be advising this Court that Defendants be given a full opportunity to present their arguments on the issue of exceptionality by conducting further proceedings; either through briefing, or an additional hearing. That suggestion is supported by other excerpts from the Court of Appeals decision:

> Additionally, and *without briefing from either party*, the district court ruled the case to be exceptional and awarded attorney fees. *Id.*, at 1354.
>
> The district court then awarded unquantified attorney fees against the Defendants, leaving the amount to be determined in *further proceedings, which have yet to be conducted*. *Id.*, at 1359.
>
> Even if it was clear in a particular case that a district court erred, and thus early review would obviate *further proceedings*, such conclusion as to this court's jurisdiction could not be based upon a post-hoc analysis of the correctness of the district court's decision. *Id.*, at 1361.

Of note, KSU and Seed stated in their appeal brief to the Federal Circuit that they have not been given the opportunity to brief the issue of whether this case is exceptional and whether an award of attorney fees is warranted. [Appellant Brief, at 6]. That is not so. KSU and Seed did have an opportunity to respond to Plaintiff's Application for Fees and Costs, including the trial court's preliminary finding of exceptionality, but declined to comment on that issue because they wrongly asserted that this Court no longer had jurisdiction over the matter.[1] Nevertheless, it is clear that the Court of Appeals considers this Court's finding of exceptionality to be interlocutory in nature, and as such, it can be amended by the Court at any time, including after the conduct of further proceedings. *Falana*, 669 F.3d at 1361-62 ("…because this is not an appeal from a judgment of

[1] KSU and Seed stated in Defendants' Response in Opposition to Plaintiff's Application for Attorney Fees and Costs, "Plaintiff begins by arguing that the case is exceptional and that attorneys' fees are warranted. The Court, however, has already made these findings, over which the U.S. Court of Appeals for the Federal Circuit now has jurisdiction. As a result, there is no reason for Plaintiff to reargue these points. Nor is there any reason for the Court to address them, having already done so. Having already filed their opening brief with the Federal Circuit, Defendants also have no further reason to address Plaintiff's opening arguments." [DE 105, at 1].

patent infringement, the interlocutory provision of § 1292(c)(2) does not apply. Instead, § 1295, with its finality requirement, provides the court's jurisdiction over this appeal.").

**II. Inequitable Conduct versus Litigation Misconduct**

The Court of Appeals did comment, without passing judgment, on this Court's exceptionality finding, insofar as it stated that:

> The district court found this case to be exceptional on three grounds: "[1] that defendants engaged in inequitable conduct, [2] that they took an untenable position in defending this case, and [3] that their continued defense of this case in the face of testimony that lacked credibility and veracity was frivolous and bordered on bad faith."

*Falana*, at 1359. At oral argument, the Federal Circuit panel questioned Falana's counsel as to why Falana would want the panel to affirm the appropriateness of fees, which was supported in part by a finding of "inequitable conduct," when such a finding could later have a negative impact on the future enforceability of the patent. [CAFC Oral Argument Audio, at 0:26:15-0:28:10] (available at: http://www.cafc.uscourts.gov/ oral-argument-recordings/all/falana.html).

In this case, the Court of Appeals panel inquired as to whether the use of the term "inequitable conduct" by the District Court was intended to mean what it traditionally means as a term of art in patent law.

> COUNSEL: There simply was no inequitable conduct. I don't even know where that issue came from. It wasn't litigated, nobody argued it, it just showed up in the findings later, and even there it's…
>
> COURT: But do you assume that it was not the term of art that we all know in patent law of inequitable conduct, that it was just a description of the conduct of the parties, which he found improper or egregious? Is that what you assume?
>
> COUNSEL: I didn't assume that. Maybe that's what the District Court meant, maybe I'm just so patent focused that when I see "inequitable conduct" I go "Holy smokes. What are we talking about here?"
>
> COURT: So, in your view, what does this cloud, composed of the attorney's fees decision, what does that do to the value of the patent?



`

[CAFC Audio, at 0:31:36-0:32:19]. In a case distinguishing between litigation misconduct and inequitable conduct, the Federal Circuit stated,

> . . . the remedies for litigation misconduct differ from the remedies for misconduct in acquisition of a property right. While inequitable conduct before the PTO renders the patent unenforceable by any party, the unclean hands doctrine bars only the offending party.

*Aptix Corp. v. Quickturn Design Sys., Inc.*, 269 F.3d 1369, 1376 (Fed. Cir. 2001). Perhaps the Court of Appeals comment should be read to merely indicate the hesitancy of the panel to affirm an exceptional case finding on grounds that could be used by others in the future to have the patent declared invalid, particularly when the term may have been misapplied. Had they affirmed a factual finding of 'inequitable conduct,' when what really occurred was 'litigation misconduct,' such an affirmance could prove harmful to the interests of even the innocent inventor, Dr. Falana. Because the Court of Appeals didn't take up the issue, the District Court now has the opportunity to amend its determination of exceptionality to prevent an injustice to Falana.

As this Court previously recognized, 'inequitable conduct' is only one factor a Court may consider in determining exceptionality.

> There are a number of factors that the Court may consider as a basis for determining whether a case is an exceptional case, which include inequitable conduct, presentation of a frivolous defense, vexatious conduct, and bad faith. *Id.*; *Gustafson, Inc. v. Intersystems Indus. Products., Inc.*, 897 F.2d 508, 511 (Fed. Cir. 1990) (citing *Kaufman Co. v. Lantech, Inc.*, 807 F.2d 970, 979 (Fed. Cir. 1986)). Further, the Court may consider the totality of the circumstances and multiplicity of conduct in determining whether a case is exceptional. See *Gustafson, Inc. v. Intersystems Indus. Products., Inc.*, 897 F.2d at 511; *Kaufman Co. v. Lantech, Inc.*, 807 F.2d at 979.

[DE 92, at 41]. Further expanding on this list, the Federal Circuit has said, "factors relevant to determining whether a case is exceptional include 'the closeness of the question, pre-filing investigation and discussions with the defendant, and litigation behavior.' Where a patentee 'prolongs litigation in bad faith, an exceptional finding may be warranted.'" *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 916 (Fed. Cir. 2012), citing *Computer Docking Station Corp. v.*



`

*Dell, Inc.*, 519 F.3d 1366, 1379 (Fed. Cir. 2008). Where a litigant is "manifestly unreasonable … while continuing to assert [their claims] in court, an inference is proper of bad faith, whether grounded in or denominated wrongful intent, recklessness, or gross negligence." *Eltech Sys., Corp. v. PPG Indus.*, 903 F.2d 805, 811 (Fed. Cir. 1990)

Whether the Court ultimately finds that the Defendants' presented untenable defenses, or relied on the testimony of witnesses found not to be credible, or tendered falsified documents to the Court as credible evidence, or took contrary positions before this Court and the Court of Appeals; all of this simply serves to support this Court's original finding:

> Accordingly, the Court finds that, in the totality of the circumstances of this case, that defendants ~~engaged in inequitable conduct, that they~~ took an untenable position in defending this case, and that their continued defense of this case in the face of testimony that lacked credibility and veracity was frivolous and bordered on bad faith. As a consequence, the Court concludes that this case is "exceptional" within the meaning of § 285.

[DE 92, at 42] (emphasis added to remove text the Court of Appeals found troubling). The Court's previous Findings of Fact, Conclusions of Law and Order cites numerous examples of KSU and Seed's frivolous defenses, which bordered on bad faith, and their reliance on questionable documentary evidence and testimony, all of which are sufficient to find this case exceptional. [DE 92, at 3-26 and 41-44].

## II. Facts Supporting Exceptionality

### A. The Testimony Relied On is What Counts, Not Who Called the Witness

In their appellant brief before the Federal Circuit, KSU and Seed argued, "[t]he findings and conclusions refer eight times to 'defendants' witnesses' or the 'inventors' in the plural when discussing testimony the court found not credible, and therefore lump Dr. Seed, who was the sole defense witness, together with Drs. Doane and Khan." [Appellant Brief, at 49]. Defendants' counsel also argued before the Federal Circuit panel:

COUNSEL: One of the biggest problems was that the District Court lumped the testimony of my clients, but also the non-party individuals, Drs. Doane and Khan, they weren't represented, or part of, the university. They were called by Dr. Falana. They were non-parties by that point, but the District Court repeatedly lumps everybody together, and then sanctions KSU and Dr. Seed. That's an abuse of discretion.

[CAFC Audio, at 0:30:46-0:31:16]. While KSU and Seed may hope to gain traction by highlighting this Court's use of the term "defendants' witnesses" in reference to the testimony of Doane and Khan, it is irrelevant as to who the witness was, or which party called him. The real relevance is that *the testimony upon which Defendants' relied* was not credible, or was of questionable veracity, and was directly contradicted by the documentary evidence.

**B. The INS Letter**

Defendants, however, did not stop just at this Court's use of the term "defendants' witnesses," but went so far as to argue in their Appellant Brief, "Even more blatantly, every time the district court's findings and conclusions mention incredible testimony, followed by examples, the first example given is *Dr. Doane's letter to the INS*, not any conduct of Kent State or Dr. Seed." [Appellant Brief, at 49] (emphasis original). Counsel also argued before the appeals panel that:

COUNSEL: If you're going to sanction someone, you need to be specific as to what their sanctionable conduct is. And repeatedly, the District Court goes back to this INS letter, but that was by Dr. Doane, that wasn't by anyone at KSU or Dr. Seed. So, that's the abuse of discretion right there.

[CAFC Audio, at 0:31:16-0:31:36]. Oh, really! The INS letter was written *on KSU letterhead*, and Dr. Doane signed it in his capacity as Director Emeritus of the Liquid Crystal Institute, *a KSU entity*. [Plaintiff's Trial Exhibit 25]; [DE 88, at 89]; [DE 88, at 51] (Doane trial testimony – "the Liquid Crystal Institute is part of the university."). And, at the time of the research project at issue in this case, Dr. Doane maintained an office at KSU, where the biweekly project meetings were often held. [DE 89, at 174; TR302].



`

"[W]hen it becomes apparent that discoverable evidence will not bear out the claim, the litigant and his attorney have a duty to discontinue their quest." *Phonometrics, Inc. v. Westin Hotel Co.*, 350 F.3d 1242, 1248 (Fed. Cir. 2003), citing *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991). Since the INS letter is directly attributable to the Defendants (particularly KSU), it is proof that Defendants were in possession, *from the outset*, of evidence confirming Dr. Falana's contribution to the patent. Though Falana had called Doane as a witness, Doane's testimony attempting to explain away the import of the INS letter was actually solicited by the Defendants, not Falana. [DE 89, at 15-19; TR143-47]. Defendants should not have relied on such questionable testimony, testimony which the Court found so troubling that it suggested to the Defendants the wisdom of continuing their resistance to Falana's claim.

> THE COURT: I'm going to take a 15-minute recess. I want you to go out and see if you can settle this case. Because I don't know how the defense can swallow that paragraph. I really don't. Like I said, I'm a busy guy. I got a lot of work to do and I look at that paragraph and wonder why am I sitting here. Take a 15-minute recess. You may talk it out.

[DE 88, at 90]. Despite this admonition, Defendants insisted on prolonging the litigation by continuing their untenable defense and their reliance on testimony and documents of questionable veracity.

### C. Co-Inventors' Concession

Despite Doane's apparent reversal at trial of his position as to Falana's joint inventorship, early on in this litigation, both Doane and Khan consented to the addition of Falana as an inventor. [DE 92, at 1]. But, Seed refused to do likewise, relying instead on documents of questionable veracity, and his own testimony, which was found not to be credible.

> Another inventor also testified that an amazing number of documents, as well as prior deposition testimony, were inaccurate or incorrect, and that various testimony given during his deposition were not accurate statements. These occurrences were so significant - even going so far as testifying that the '789 Patent and its underlying documentation were incorrect as to a number of matters and that the claims did not

> accurately represent the invention claimed, including what constituted the novelty of the invention - that the Court raised its concerns during the trial regarding the credibility and veracity of the witness.

[DE 92, at 41-42]. Seed's stubborn refusal to yield to the overwhelming evidence in support of Falana's inventorship, and KSU's inexplicable support of Seed, is troubling, particularly when considering the weakness of Defendants' case compared to the resources spent in opposition to Falana's claim.

**D. <u>Additional False Testimony</u>**

The INS letter (a letter sent from KSU), was not the only piece of evidence that undermined Defendants' position. After Falana left KSU, KSU and Seed were in sole possession of Falana's notebooks, which disclosed the patented compounds, *and* the method for making them. Further, email evidence admitted at trial indicates that the patent application was being prepared *prior to Falana's departure*, and that it was left to Seed to decide whether or not Falana should be excluded from the patent. [Plaintiff's Exhibits 42 & 43]. This email correspondence, and the INS letter, directly contradicts Seed's testimony that no patent was being worked on prior to Falana's departure; which only serves as further proof of Defendants' litigation misconduct. Voluminous records and correspondence further corroborated Falana's claim to inventorship, and though Seed testified that there were, at one time, documents that could corroborate his testimony as to when the patent application was started, those documents were lost to a computer virus. [DE 90, at 35].

Defendants' attempts to refute the evidence supporting Falana's claim centered on two things, the testimony of Alex Seed, and the dubious "White Paper." The Court found Seed not credible, and could not "conclude that the White Paper was prepared on the date indicated." [DE 92, at 6, 14, 18-19]. The Court concluded that,

> *Seed's testimony* regarding the accuracy of the contents of the paper that was authored by Seed, Falana, Khan and Doane, the accuracy of the '789 Patent and related documentation, and *the conflict in Seed's testimony* regarding the signing and

> dating of Falana's research notebooks left the Court with the firm conclusion that the named inventors' present testimony regarding past events and documentation is not credible and shaped by the filing of this litigation in an attempt to recast past events to support Falana's exclusion as a joint inventor of the '789 Patent.

[DE 92, at 16]. Defendants should be mindful that "[a]wards of attorney fees under section 285 are reviewed under a highly deferential standard." *Medtronic*, 603 F.3d at 953, referencing *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1026 (Fed. Cir. 2008).

**III. Reaching Trial and the Subsequent Appeal are Not Indicators of Good Faith**

This Court issued an Order on May 26, 2009, which stated, "The Court has concluded that summary judgment practice in this case would be a fruitless effort, and the efficient resolution of this case is best accomplished by advancing directly to a trial on the merits." [DE 69]. However, while this case never had a summary judgment briefing schedule, "if [a] party's success at the summary judgment stage is due to false or misleading representations about its evidence, the party cannot rely on the district court's denial of summary judgment to shield it from liability for sanctions." *Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*, 603 F.3d 943, 954 (Fed. Cir. 2010).

KSU and Seed appealed this Court's Judgment Entry on the following three issues: 1) that the Court erred in claim construction by not including a limitation for "substantial temperature independence;" 2) that the Court erred in "basing its determination of co-inventorship on the 'Synthesis Protocol';" and 3) that the Court erred in finding this case exceptional. [Appellant Brief, at 1-2]. Significantly, none of the extensive findings of fact by this Court were contested by KSU and Seed in their appeal breifing to the Federal Circuit.

In regard to the first two assignments of error on appeal, at oral argument, KSU and Seed's counsel was asked by the panel, "If we were to disagree with you hypothetically on that claim construction revision that you're proposing to what the District Court did, does that end this case, or



`

is there still any arguments that you have with respect to co-inventorship?" [CAFC Audio, at 0:01:15-0:01:30]. Counsel replied, "It does not end the case." Counsel then went on to assert that the primary basis for the Court's finding of inventorship was Falana's development of the Synthesis Protocol.

> COUNSEL: Now, the other part to the inventorship issue was the synthesis protocol. And, the District Court relied on this synthesis protocol, this method of synthesizing Compound 7, and eventually Compound 9, as contributing to inventorship, but, that's really legally irrelevant because there were no method claims in the patent, at all. And the synthesis protocol is clearly a method of synthesizing the compounds.
>
> COURT: But it's the method that produces the compound that's claimed.
>
> COUNSEL: It is.
>
> COURT: For conception of a compound, don't you need to know both what the compound is, and how to make it?

[Id., at 0:02:23-0:03:09]. Counsel continued with KSU and Seed's insistence that the Synthesis Protocol was nothing new.

> COURT: Was there a finding that that synthesis protocol was old? I thought the finding was that this was a new protocol, that this was a discovery of Dr. Falana?
>
> COUNSEL: I didn't read anything in the Court's opinion that said that it was new, or that it was discovered by Dr. Falana. It was in his lab notebooks, it was the protocol that ended up describing the '789 patent, but I don't see any citation in the Court's decision that said it was new, novel, or that he discovered it.

[Id., at 0:04:12-0:04:50]. Not having challenged this Court's findings of fact, counsel still argued that the Synthesis Protocol was old art, and not developed by Falana. [See DE 92, at 18] ("The Synthesis Protocol, *developed by Falana*, is reflected in the '789 Patent as the protocol utilized to synthesize the chiral compound which is the subject of the claimed invention.") (emphasis added).

The appeal in this case should not have been brought; because, even if Defendants had won on their argument regarding whether development of the Synthesis Protocol should support Falana's material contribution claim to inventorship, the Synthesis Protocol was only one factor, of many,

upon which the Court based its decision.

> The Court finds that plaintiff has carried his burden of proof by clear and convincing evidence that he contributed to the conception [of the] invention claimed in the '789 Patent, and that he collaborated with the other joint inventors to combine his contributions with theirs to achieve the invention claimed in the '789 Patent. Both the documentary evidence and testimony of the inventors corroborates plaintiff's testimony and unquestionably supports a conclusion that Falana was part of the daily interaction, exchange of ideas, joint effort and milieu of the inventive process in which the KDI Project team built on each other's ideas, each contributing to the ultimate conception of the invention claimed in the '789 Patent.
>
> Falana's contributions to the conception of the claimed invention are documented in memos, reports, e-mail exchanges and in his three research notebooks, and include his contribution of the Synthesis Protocol and the synthesis of Compound 7, which contributed to the ultimate synthesis of Compound 9 claimed in '789 Patent. The Court finds that Falana's contributions to the conception of the claimed invention were significant and that, in aggregate with the contributions of Doane, Khan and Seed, resulted in the invention that is embodied in the '789 Patent.
>
> Accordingly, the Court concludes that plaintiff Falana is a joint inventor of the '789 Patent.

[DE 92, at 39-40].

**IV. Defendants Actions from the Outset**

In various pleadings, KSU and Seed have suggested that the Court needs to set a specific point in time after which the defense of this case became untenable.[2] There is little support in the law for such a requirement. This was not a case that began with a good faith defense that later became untenable. From the outset, KSU and Seed were willing to let the patent expire rather than concede to Falana's inventorship (see DE 8); they refused to acknowledge Falana's inventorship when Falana inquired in 2005 into the status of "the patent application we were putting together shortly before my relocation" (see Plaintiff's Exhibit 42); Falana was dropped from the initial draft application of the patent at Seed's insistence (DE 89. at 138); and, even after Doane and Khan

[2] Falana believes that Defendants are attempting to limit their exposure to fees by getting the Court to choose a specific point in time at which defense of the case became untenable, and then seeking a reversal on appeal, similar to the decision in *Old Reliable Wholesale, Inc. v. Cornell Corp*., 635 F.3d 539 (Fed. Cir. 2011). However, the evidence in this case calls into question the veracity of Defendants' positions from the very outset of this dispute.



`

consented to having Falana added to the patent (see Plaintiff's Exhibit 46), KSU and Seed still refused to acknowledge Falana's inventorship.

There is a consistent pattern establishing KSU and Seed's efforts to exclude Falana from the patent. KSU and Seed were the only ones who had access to Dr. Falana's notebooks. They knew what Falana's contributions were (KSU was in possession of the INS letter); they even wrote an article about the team's success, and included Dr. Falana as a co-author on the paper. KSU and Seed dismissed the fact that Doane and Khan had conceded to Dr. Falana's inventorship by saying that Doane and Khan were not qualified to determine inventorship. Yet, KSU accepted Seed's opinion on inventorship, without even talking to Falana. Why was Seed qualified to determine inventorship, but Doane and Khan were not? Seed said that Doane told him to review Falana's notebooks. Doane denied knowing Falana even had notebooks. [DE 88, at 121].

## V. Conclusion

### A. Incorporation of Prior Documents

Falana incorporates herein by reference Plaintiff's Application for Attorney Fees and Costs (DE 104), and Plaintiff's Reply to Defendants' Oppositon to Plaintiff's Application for Fees and Costs (DE 106), and all attachments thereto. Falana is also submitting a Supplement to Plaintiff's Application for Attorney Fees and Costs, per the Court's Order of April 20, 2012.

### B. Factors to be Considered

In this case, Defendants' claims lacked credible evidentiary support. There were numerous occurrences at trial where Seed's trial testimony was not consistent with the documentary evidence and his own prior testimony and writings, as this Court has previously stated.

> There were numerous occurrences at trial where the named inventors' trial testimony was not consistent with the documentary evidence and their own prior testimony and writings, and in some cases admitted that certain documentation and/or statements were not true but were made to serve another purpose. Such inconsistencies were

> typically explained by the defendants' witnesses as errors or mistakes in the record which were not discovered until after this lawsuit was instituted. However, after considering the documentary evidence which was created contemporaneously with the events now at issue, and after considering the witnesses' testimony and evaluating their credibility and veracity, the Court concludes that the named inventors' post-lawsuit characterization of the meaning and accuracy of the contemporaneous physical evidence against Falana's joint inventorship is not credible.

[DE 92, at 37, n. 22]. Significantly, the Court of Appeals did not disturb any of this Court's extensive findings of fact.

> Here, the district court concluded that Falana's contribution was greater than the exercise of ordinary skill. The district court made such a determination based on the documentary evidence before the court and the testimony of the named inventors themselves. The district court was not persuaded by Seed's testimony that Falana's Synthesis Protocol was nothing more than the basic exercise of ordinary skill because it was simply "old chemistry." Instead, the district court "conclude[d] that the named inventors' post-lawsuit characterization of the meaning and accuracy of the contemporaneous physical evidence against Falana's joint inventorship [was] not credible." *Opinion* at 37 n.22. The district court found that Falana developed the Synthesis Protocol to synthesize Compound 7, an SS enantiomer. The district court also found that, contrary to Seed's testimony, Falana did not develop the Synthesis Protocol by simply following the teachings of others. *Opinion* at 37. Compound 7 is a species within the genus of naphthyl substituted TADDOLs—a previously unknown genus of chemical compounds.

*Falana*, 669 F.3d at 1359. In light of the Court of Appeals affirmance of those findings, this Court is within its discretion to sanction KSU and Seed's conduct by awarding attorney fees to Falana.

> [C]ourts are free to sanction bad faith conduct that arises during the course of litigation. These "inherent powers" to punish bad faith conduct during litigation are "necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc*., 501 U.S. 32, 44 (1991). [. . .] Although a particularly severe sanction, outright dismissal of a lawsuit is within the court's discretion. [citation omitted]. And, the "'less severe sanction' of an *assessment of attorney's fees is undoubtedly within a court's inherent power* as well." 501 U.S. at 45 (citing *Hutto v. Finney*, 437 U.S. 678, 689 n.14 (1978)).

*Aptix*, 269 F.3d at 1378 (emphasis added).

In this case, it is also important to remember the disparity of resources between the parties involved. As this Court stated:



`

> Plaintiff is an individual without the resources of a large institution such as KSU to litigate the issue of inventorship. A significant commitment to the integrity of our patent system was required by plaintiff to persevere against a large institution and witnesses who admitted making inaccurate statement in order to achieve other ends [. . .] and in view of the fact that the Court's determination that plaintiff is a co-inventor results in no monetary award or damages to plaintiff.
>
> After carefully listening to the trial testimony of defendants' witnesses to defeat Falana's claim, the Court concluded that their testimony was not credible, lacked veracity, and was highly suspect, and that the defendants' defense of this case was frivolous and bordered on bad faith. Failing to award attorney fees in these circumstances would have a chilling effect on individual inventors' ability to come forward with claims regarding correct inventorship, which in turn imperils the integrity of our patent system.

[DE 92, at 43].

The Sixth Circuit has said that the goal, in cases such as this, is to award the fee "necessary to encourage competent lawyers to undertake the representation in question." *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999), citing *Coulter v. State of Tennessee*, 805 F.2d 146, 149 (6th Cir.1986).

> Under the twelve-factor test enunciated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714 (5th Cir. 1974), and adopted by the Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424, 432 (1983), a court must first determine the lodestar amount by multiplying the reasonable number of hours billed by a reasonable billing rate. That amount can then be adjusted based on the *Johnson* factors.[FN3]

*Reed*, at 471-472 and n.3. When applying the factors to be reviewed in reaching the kind of fee necessary to encourage other competent lawyers to undertake representation in similar cases, the amount Falana seeks is reasonable indeed.

Respectfully Submitted: ______________________

Bruce H. Wilson, # 0000989
789 West Market Street
Akron, OH 44303
(330) 253-8300
BruceWilsonEsq@aol.com
Attorney for Plaintiff Olusegun Falana

**CERTIFICATE OF SERVICE**
Case No.: 5:08CV720

I hereby certify that the foregoing **Plaintiff's Brief in Support of Finding This to be an Exceptional Case and Awarding Attorney Fees**, was served on the following persons:

R. Eric Gaum, # 0066573
Scott M. Oldham, # 0055323
William S. Nabors, # 0080853
Hahn Loeser & Parks, LLP
One GOJO Plaza, Suite 300
Akron, Ohio 44311-1076
eric@hahnlaw.com
scott@hahnlaw.com
bnabors@hahnlaw.com
Attorneys for Defendants Kent State University and Alexander J. Seed

via email and the Court's ECF system, on this the 17th day of May, 2012.

Signed: /s/ Bruce H. Wilson
Bruce H. Wilson, # 0000989
789 West Market Street
Akron, OH 44303
(330) 253-8300
BruceWilsonEsq@aol.com
Attorney for Plaintiff Olusegun Falana



`